**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jozel Victoria Martinez, | No. CV-22-01342-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff challenges the denial of her applications for benefits under the Social Security Act ("the Act") by the Commissioner of the Social Security Administration ("Commissioner"). The Court has reviewed Plaintiff's opening brief (Doc. 15), the Commissioner's answering brief (Doc. 16), and Plaintiff's reply (Doc. 17), as well as the Administrative Record (Doc. 11, "AR"), and now affirms the Administrative Law Judge's ("ALJ") decision.

I.    Procedural History

On September 5 and 30, 2019, Plaintiff filed applications for disability and disability insurance benefits, both times alleging disability beginning on May 31, 2019. (AR at 17.) The Social Security Administration ("SSA") denied Plaintiff's applications at the initial and reconsideration levels of administrative review and Plaintiff requested a hearing before an ALJ. (*Id.*) On May 17, 2021, following a telephonic hearing, the ALJ issued an unfavorable decision. (*Id.* at 17-24.) The Appeals Council later denied review. (*Id.* at 1-4.)

II.     The Sequential Evaluation Process And Judicial Review

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

An ALJ's factual findings "shall be conclusive if supported by substantial evidence." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted). In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

III.   The ALJ's Decision

The ALJ found that Plaintiff had not engaged in substantial, gainful work activity since the alleged onset date and that Plaintiff had the following medically determinable impairments: "bipolar disorder, anxiety with panic attacks, and marijuana use/abuse." (AR at 19.)[1]   However, the ALJ concluded that none of these impairments, individually or collectively, would "significantly limit[] (or [be] expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months." (*Id.* at 20.)   Thus, the ALJ found that Plaintiff did not have a "severe" impairment, as required to progress past two, and concluded (without addressing the remaining steps of the sequential analysis) that Plaintiff was not disabled. (*Id.* at 24.)

In the course of the step-two analysis, the ALJ evaluated Plaintiff's symptom testimony, concluding that although Plaintiff's "medically determinable impairments could reasonably be expected to produce some of the alleged symptoms," her "statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent for the reasons explained in this decision." (*Id.* at 21.)   Additionally, the ALJ evaluated opinion evidence from various medical sources, concluding as follows: (1) Nereuda Cruz, M.A. ("unpersuasive"); (2) Uwe Jacobs, Ph.D., state agency consultant ("persuasive"); and (3) Helen Patterson, Ph.D., state agency consultant ("persuasive"). (*Id.* at 23-24.)[2]

IV.   Discussion

Plaintiff presents two issues on appeal: (1) whether the ALJ improperly discredited the medical opinions of Cruz, which in turn infected the ALJ's step-two analysis; and (2) whether the ALJ improperly discredited Plaintiff's symptom testimony. (Doc. 15 at 1, 10, 18.)   Plaintiff further argues that "[r]emand without further administrative proceedings,

---

[1]   The ALJ also noted that Plaintiff made allegations of "unspecified back pain" but concluded that this alleged impairment was "not medically determinable because there is a lack of medical evidence to substantiate any disorder of the lumbar spine." (AR at 20.)

[2]   The ALJ's opinion does not refer to "the state agency medical and psychological consultants" by name. (AR at 24.) As the ALJ noted, their corresponding opinions appear at Exhibit 3A (AR at 106-12), Exhibit 4A (AR at 113-19), Exhibit 7A (AR at 122-33), and Exhibit 8A (AR at 134-45).

1  other than calculation of benefits, would be an appropriate remedy in this case.  Only in

2  the alternative should this Court remand for further administrative proceedings."  (*Id.* at

3  24-25.)

4       A.   **Cruz**

5       Plaintiff's first argument is that "[t]he ALJ committed materially harmful error by

6  concluding [her] mental impairments were not severe, which was founded on the ALJ's

7  improper rejection of counselor Cruz's assessment without providing sufficient

8  explanation that included a rational interpretation of this record supported by substantial

9  evidence that also failed to explain the consideration of the supportability and consistency

10  factors under the agency's regulations for evaluation of medical source opinions."  (Doc.

11  15 at 10.)

12       1.   <u>Standard of Review</u>

13       In January 2017, the SSA amended the regulations concerning the evaluation of

14  medical opinion evidence.  *See Revisions to Rules Regarding Evaluation of Medical*

15  *Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017).  Because the new regulations apply to

16  applications filed on or after March 27, 2017, they are applicable here.

17       The new regulations, which eliminate the previous hierarchy of medical opinions,

18  provide in relevant part as follows:

> We will not defer or give any specific evidentiary weight, including
> controlling weight, to any medical opinion(s) or prior administrative medical
> finding(s), including those from your medical sources . . . .  The most
> important factors we consider when we evaluate the persuasiveness of
> medical opinions and prior administrative medical findings are supportability
> . . . and consistency . . . .

20 C.F.R. § 416.920c(a).[3]  Regarding the "supportability" factor, the new regulations

explain that the "more relevant the objective medical evidence and supporting explanations

presented by a medical source are to support his or her medical opinion(s), . . . the more

---

[3]      Other factors that may be considered by the ALJ in addition to supportability and
consistency include the provider's relationship with the claimant, the length of the
treatment relationship, the frequency of examinations, the purpose and extent of the
treatment relationship, and the specialization of the provider.  20 C.F.R. § 416.920c(c).

persuasive the medical opinions . . . will be." *Id.* § 404.1520c(c)(1).  Regarding the "consistency" factor, the "more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.* § 404.1520c(c)(2)

Recently, the Ninth Circuit confirmed that the "recent changes to the Social Security Administration's regulations displace our longstanding case law requiring an ALJ to provide 'specific and legitimate' reasons for rejecting an examining doctor's opinion." *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022).  Thus, "the former hierarchy of medical opinions—in which we assign presumptive weight based on the extent of the doctor's relationship with the claimant—no longer applies.  Now, an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id.*  With that said, "[e]ven under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence.  The agency must articulate how persuasive it finds all of the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings." *Id.* at 792 (cleaned up).  Although an "ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records . . . the ALJ no longer needs to make specific findings regarding these relationship factors . . . ." *Id.*

### 2.   Cruz's Opinions

On March 6, 2020, Cruz filled out a form entitled "Supplemental Questionnaire As To Residual Functional Capacity."  (AR at 738-39.)  On the first page of the form, Cruz checked a series of pre-printed boxes indicating that Plaintiff had "Marked" or "Extreme" limitations in a range of activities, including understanding and remembering short, simple instructions, carrying out short, simple instructions, understanding and remembering

detailed instructions, and maintaining attention and concentration for up to one hour. (*Id.* at 738.) On the second page, Cruz checked additional boxes indicating, *inter alia*, that Plaintiff would be "off task" more than 30% of the time in a competitive work environment, that Plaintiff would be absent from work five or more days per month, and that Plaintiff would be less than 50% as efficient as the average worker. (*Id.* at 739.) Finally, in the optional comment box at the bottom of page two, Cruz wrote: "This form was completed based on Jozel's individual counseling sessions since 01/08/2020 and her collaboration to provide information related to questions. Please refer to her medical and psychiatric records for more information." (*Id.*)

### 3.   The ALJ's Evaluation Of Cruz's Opinions

The ALJ found Cruz's opinions unpersuasive. (*Id.* at 23.) The ALJ's full rationale was as follows:

> In March 2020, Nereuda Cruz, M.A., completed a check-the-box residual functional capacity form and opined that the claimant had marked limitations understanding and remembering simple instructions; she had extreme limitations understanding/remembering detailed instructions, maintaining concentration for one or two hour periods, or performing at a consistent and continuous pace; she had extreme limitations interacting appropriately with supervisors, the public, or coworkers; she had extreme limitations responding appropriately to work changes or work pressures in the usual work setting. In addition, would be absent from work of five or more days a month. The undersigned has found Ms. Cruz' opinions unpersuasive because they were extreme and unsupported by any objective medical evidence. Ms. Cruz reported the opinion was based on counseling sessions, which relied on the claimant's reported subjective complaints rather than clinical findings such as mental status examinations. The opinions were also inconsistent with the minimal treatment record and lack of other supporting opinion evidence. The claimant had no emergency room visits due to mental incapacity, no inpatient hospitalizations, and very inconsistent adherence to attending counseling sessions. Ms. Cruz was not an acceptable medical source and had far less training and experience than the DDS evaluators. Thus, the undersigned found no medical evidence to support Mr. Cruz' opinion.

(*Id.* at 23-24, record citations omitted.)

### 4.   The Parties' Arguments

Plaintiff begins by noting that the step-two severity inquiry is usually "a low bar" and by asserting that "[t]his record established [her] mental impairments caused more than a minimal effect on her ability to sustain work." (Doc. 15 at 10-11.) Turning to the ALJ's

step-two analysis, Plaintiff correctly notes that "[t]he ALJ's decision finding [her] mental impairments not severe was founded on opinions from the agency nonexamining reviewers, which the ALJ found 'persuasive,'" and upon the ALJ's "reject[ion of] the assessment from [Plaintiff's] treating mental health counselor, counselor Cruz." (*Id.* at 12.) Plaintiff then argues that the ALJ provided legally insufficient reasons for discrediting Cruz's opinions. (*Id.* at 12-18.) First, Plaintiff argues that "it was error to discount the check-box questionnaire as insufficient to support the treating source assessment based on a lack of narrative explanation," in part because "Counselor's Cruz's treatment relationship with [Plaintiff] underpinned the assessment." (*Id.* at 14-15.) Next, Plaintiff argues that it was error for the ALJ to "discount[] counselor Cruz's assessment because Cruz candidly noted that the assessed limitations were based on individual counseling sessions since January 2020, and [Plaintiff's] input," arguing that (1) the assessment was not based solely on Plaintiff's subjective complaints, but also on Cruz's "treatment relationship with [Plaintiff] and [Plaintiff's] psychiatric records"; and (2) "counselor Cruz did not indicate any reason to disbelieve [Plaintiff's] reported symptoms." (*Id.* at 15-16.) Next, Plaintiff argues that "the ALJ's belief that [Plaintiff's] 'minimal treatment' was an inconsistency with counselor Cruz's assessment was belied by this record that showed [Plaintiff] received consistent medication management treatment with multiple medication trials and adjustments in failed efforts to improve her symptoms." (*Id.* at 16.) Plaintiff adds: "The same goes for the absence of psychiatric hospitalizations when there is no requirement that a claimant's mental impairments necessitate inpatient hospitalization to be deemed severe or disabling." (*Id.* at 16-17.) Finally, Plaintiff argues that the mere fact she "missed some counseling sessions does not discredit counselor Cruz's assessment given the nature of bipolar disorder. The ALJ simply does not understand the nature of [Plaintiff's] bipolar disorder." (*Id.* at 17.)

The Commissioner disagrees and defends the sufficiency of the ALJ's rationale for discrediting Cruz's opinions. (Doc. 16 at 4-8.) As for the supportability factor, the Commissioner argues that the ALJ permissibly found that Cruz's assessment of "'marked'

and 'extreme' limitation in all activities . . . was unsupported by her own observations," particularly where some of Cruz's treatment notes included notations that Plaintiff was "engaged and alert, with appropriate thought content and affect," "stable," and in a "relaxed mood." (*Id.* at 5-6.)  The Commissioner further argues that it was permissible for the ALJ to discount Cruz's opinions pursuant to the supportability factor where her "opinion—completed less than a month after Plaintiff began counseling with [her]—is little more than a check the box form with places to check yes or no." (*Id.* at 6.)  Additionally, the Commissioner argues that it was permissible for the ALJ to discount Cruz's opinions pursuant to the supportability factor in light of Plaintiff's inconsistent attendance at counseling sessions, drug use, and non-compliance with prescribed medications. (*Id.* at 6-7.)  As for the consistency factor, the Commissioner argues that it was permissible for the ALJ to discount Cruz's opinions in light of their inconsistency with (1) "Plaintiff's lack of emergency room presentation or inpatient hospitalization for mental incapacity"; (2) the opinions of the other medical sources; (3) Plaintiff's activities of daily living; and (4) medical records from other sources that described Plaintiff as "generally cooperative, with a congruent mood, logical thought process, no delusions, oriented x4, with intact insight and judgment." (*Id.* at 7-8.)

In reply, Plaintiff reiterates her contention that "[t]he ALJ's erroneous decision finding [her] mental impairments not severe, and ultimate failure to proceed past step two of the sequential evaluation, was founded on the ALJ's improper rejection of the assessment from [her] treating mental health counselor, Nereyda Cruz, LAC, MA, BHP, with insufficient rationale." (Doc. 17 at 5.)  Turning to the Commissioner's arguments, Plaintiff begins by asserting—incorrectly—that "[t]he Commissioner does not defend the ALJ's improper rejection of the assessment by relying on the fact that an assessment was completed on a check-box form." (*Id.*)[4]  Next, Plaintiff argues that her missed counseling sessions do not undermine Cruz's opinions, because they are consistent with and a function

---

[4]     As noted, the Commissioner does defend the ALJ's analysis on this point: "Ms. Cruz'[s] opinion—completed less than a month after Plaintiff began counseling with Ms. Cruz—is little more than a check the box form with places to check yes or no.  Under Ninth Circuit precedent, these unexplained opinions have little probative value." (Doc. 16 at 6.)

of her bipolar disorder, and accuses the Commissioner of committing the same error as the ALJ by suggesting otherwise.  (*Id.* at 6.)  Finally, Plaintiff argues that the Commissioner's references to her drug use, daily activities, and failure to take psychotropic medication amount to impermissible post hoc rationales because "the ALJ did not rely on those reasons to discredit counsel Cruz's assessment."  (*Id.*)

5.   <u>Analysis</u>

The ALJ's evaluation of Cruz's opinions is free of harmful error.  "The agency must articulate how persuasive it finds all of the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings."  *Woods*, 32 F.4th at 792 (cleaned up).  Here, the ALJ expressly considered both of the required factors.  (AR at 23-24 [concluding that Cruz's opinions are "unpersuasive" because they are "unsupported" and "also inconsistent with the minimal treatment record and lack of other supporting opinion evidence"].)

The ALJ's determination as to each factor was also supported by substantial evidence.  The ALJ identified what the Court perceives to be three reasons for discrediting Cruz's opinions pursuant to the supportability factor: (1) they were expressed in "a check-the-box residual functional capacity form"; (2) "they were extreme and unsupported by any objective medical evidence"; and (3) they were "based on counseling sessions, which relied on the claimant's reported subjective complaints rather than clinical findings such as mental status examinations."  (*Id.*)

As for the first reason, although "there is no authority that a 'check-the-box' form is any less reliable than any other type of form," *Trevizo v. Berryhill*, 871 F.3d 664, 677 n.4 (9th Cir. 2017), the Ninth Circuit has also clarified that "[a]n ALJ is not required to take medical opinions at face value, but may take into account the quality of the explanation when determining how much weight to give a medical opinion.  While an opinion cannot be rejected merely for being expressed as answers to a check-the-box questionnaire, the ALJ may permissibly reject check-off reports that do not contain any explanation of the bases of their conclusions."  *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020) (citations

and internal quotation marks omitted).  Here, Cruz provided no explanation at all for why she checked the boxes in the manner she checked them, other than to assert in conclusory fashion in the final paragraph of the form that "[t]his form was completed based on Jozel's individual counseling sessions since 01/08/2020 and her collaboration to provide information related to questions.  Please refer to her medical and psychiatric records for more information."  (AR at 739.)  This lack of reasoned explanation was particularly noteworthy because the first page of the form explained that "[i]t is essential . . . [that] your answers are consistent with your narrative report/medical records.  Please explain any inconsistency between this [evaluation] and your records."  (*Id.*at 738.)  As discussed below, there were such inconsistencies here, yet Cruz made no effort to explain them.  Under these circumstances, it was permissible for the ALJ to discount Cruz's unexplained checkbox opinions pursuant to the supportability factor.  *See, e.g.*, *Weiss v. Kijakazi*, 2023 WL 4030839, *1 (9th Cir. 2023) ("These opinions were in check-box form and were not accompanied by explanation or narrative.  Because these opinions contained little in terms of 'objective medical evidence and supporting explanations,' the ALJ reasonably found them unpersuasive.").

The Court also finds no error in the ALJ's second reason for discounting Cruz's opinions pursuant to the supportability factor.  Although Cruz opined that Plaintiff would have "marked" or "extreme" limitations in every possible functional category, Cruz's underlying treatment notes contain a variety of notations that the ALJ could have rationally construed as inconsistent with such limitations.  For example, in a February 18, 2020 note, Cruz wrote that Plaintiff "appeared engaged and alert" and that Plaintiff's "affect appeared appropriate to thought content."  (AR at 746.)  Similarly, in a June 2, 2020 note, Cruz wrote that Plaintiff "appeared engaged and alert," that Plaintiff's "affect appeared appropriate to thought content," that Plaintiff's "mood appeared calm and relaxed," and that Plaintiff "maintained eye contact" and "appears to be making progress."  (*Id.* at 813.)  Cruz made the same observations in a July 29, 2020 note (*id.* at 815) and a September 2, 2020 note (*id.* at 817).  An ALJ may permissibly discredit a medical opinion under these

circumstances.  *Cf. Delgadillo v. Kijakazi*, 2022 WL 301548, *2 (9th Cir. 2022) ("The ALJ offered 'specific and legitimate' reasons for giving little weight to the opinions of Delgadillo's . . . psychological consultative examiner, Dr. James McNairn . . . [whose] opinion that Delgadillo's severity of symptoms was in the moderate to serious range was inconsistent with findings in his psychological examination regarding her unremarkable mental status . . . .").  Although Plaintiff attempts to explain how such observations could be construed as consistent with Cruz's opinions, it was rational for the ALJ to conclude otherwise.  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) ("When evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ.") (citing *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004)).

Given these conclusions, it is unnecessary to resolve Plaintiff's challenge to the ALJ's third reason for discounting Cruz's opinions pursuant to the supportability factor. Any error was harmless in light of the sufficiency of the ALJ's other reasons.  *See, e.g., Reed v. Saul*, 834 F. App'x 326, 329 (9th Cir. 2020) ("To the extent the ALJ erred in discounting the opinions of Dr. Cochran because her opinions were based in part on Reed's self-reports of his symptoms, that error is harmless because the ALJ offered multiple other specific and legitimate reasons for discounting Dr. Cochran's opinions."); *Baker v. Berryhill*, 720 F. App'x 352, 355 (9th Cir. 2017) ("Two of the reasons the ALJ provided for discounting examining psychologist Dr. Wheeler's opinion were not legally valid . . . [but] the ALJ provided other specific and legitimate reasons for discounting Dr. Wheeler's opinion. . . .  As a result, any error was harmless."); *Presley-Carrillo v. Berryhill*, 692 F. App'x 941, 944-45 (9th Cir. 2017) ("The ALJ also criticized Dr. Van Eerd's opinion in part because Dr. Van Eerd did not define the terms 'mild,' 'moderate,' or 'severe' in his assessment.  This criticism was improper . . . [but] this error was harmless because the ALJ gave a reason supported by the record for not giving much weight to Dr. Van Eerd's opinion—specifically, that it conflicted with more recent treatment notes from Dr. Mateus.").

Turning to the consistency factor, the ALJ concluded that Cruz's opinions should be discredited because they were "inconsistent with the minimal treatment record and lack of other supporting opinion evidence." (AR at 24.) The ALJ also noted that Cruz "had far less training and experience than the DDS evaluators," whose conflicting opinions the ALJ viewed as "persuasive." (*Id.*) The first proffered reason—inconsistency with treatment records from other providers—is a permissible basis for discrediting a medical source's opinion pursuant to the consistency factor. Additionally, although the paragraph setting forth the ALJ's analysis of Cruz's opinion did not summarize those treatment records in any detail (AR at 23-24), the ALJ provided such a summary one page earlier, when discussing why Plaintiff's symptom testimony was unworthy of credence:

> Mental status examination were consistently rather unremarkable with a calm mood, alert, cooperative, good hygiene, well groomed, normal speech, appropriate thought content, intact memory, intact attention/concentration, and good insight/judgment. The mere fact that the claimant alleged various mental symptoms was not sufficient to establish the existence of such symptoms, especially when the mental status examinations did not support such a finding. In September 2019, the claimant reported that medications were "working well to control her depression and mood swings." She denied auditory and visual hallucinations, did not appear to respond to internal stimuli, and denied suicidal/homicidal ideations.

(*Id.* at 22, record citations omitted.) That analysis, which is properly considered part of the ALJ's consistency analysis,[5] is supported by substantial evidence, as the ALJ accurately summarized the cross-referenced medical records. (*Id.* at 643 [December 2018 note from provider Abigail Delgado appearing at Exhibit 4F/3, reflecting normal mental status exam]; *id.* at 650 [July 2018 note from provider Delores Angela Walker PMHNP-BC appearing at Exhibit 4F/10, reflecting normal mental status exam]; *id.* at 654-55 [October 2018 note from provider Amy Porter MSN PMHNP-BV appearing at Exhibit 4F/14-15, reflecting normal mental status exam]; *id.* at 675 [September 2019 note from provider Amy Porter MSN PMHNP-BV appearing at Exhibit 4F/35, reflecting normal mental status exam]; *id.*

---

[5]    *Kaufmann v. Kijakazi*, 32 F.4th 843, 851 (9th Cir. 2022) (reviewing courts must "[l]ook[] at *all* the pages of the ALJ's decision" when determining whether substantial evidence supports the decision).

at 687-88 [December 2019 note from provider Valeria Perez BHT appearing at Exhibit 5F/10-11, reflecting normal mental status exam]; *id.* at 729-30 [November 2019 note from Community Health Associates appearing at Exhibit 5F/52-53, reflecting normal mental status exam]; *id.* at 734 [February 2020 note from Community Health Associates appearing at Exhibit 5F/57, reflecting normal mental status exam]; *id.* at 793-94 [April 2020 note from provider Sidonie Ngankeu, NP appearing at Exhibit 9F/11-12, reflecting normal mental status exam]; *id.* at 802 [May 2020 note from provider Sidonie Ngankeu, NP appearing at Exhibit 9F/20, reflecting normal mental status exam].)

The Court also finds no error in the ALJ's other reason for discounting Cruz's opinions pursuant to the consistency factor, which was that they conflicted with the less-restrictive opinions of the other medical sources whom the ALJ deemed persuasive. *See generally* 20 C.F.R. § 404.1520c(c)(2) ("The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be."). *Cf. Michele I. v. Comm'r, Soc. Sec. Admin.*, 2022 WL 4533962, *5-6 (D. Or. 2022) ("The ALJ did not err in his consideration of PA Laughlin-Hall's opinion.  The ALJ considered the two most important factors in evaluating PA Laughlin-Hall's medical opinion—supportability and consistency—and the record supports the ALJ's conclusions.  The ALJ . . . not[ed] PA Laughlin-Hall's opinion 'markedly conflict[s] with opinions of the reviewing physicians for the State agency who examined the claimant's medical records' . . . .  The ALJ's consideration of PA Laughlin-Hall's medical opinion is supported by substantial evidence."); *Rafael G. v. Kijakazi*, 2022 WL 3019935, *6 (S.D. Cal. 2022) ("[I]inconsistency with two similar agency consultant opinions further supports the ALJ's inconsistency finding.").

B.    **Symptom Testimony**

1.    Standard Of Review

An ALJ must evaluate whether the claimant has presented objective medical evidence of an impairment that "could reasonably be expected to produce the pain or symptoms alleged."  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)

- 13 -

(citations omitted).  If so, "an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005).  Instead, the ALJ may "reject the claimant's testimony about the severity of [the] symptoms" only by "providing specific, clear, and convincing reasons for doing so."  *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015).  In this analysis, the ALJ may look to "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citing *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996)).

2.  The ALJ's Evaluation Of Plaintiff's Symptom Testimony

The ALJ began by providing the following summary of Plaintiff's symptom testimony:

> The claimant alleged an inability to work due to bipolar, depression, and anxiety.  The claimant reported taking prescribed medication for her mental condition.
>
> In an Adult Function Report, the claimant indicated living in a house with her two children.  She alleged an inability to work because of anxiety when interacting with others and at times not wanting to get out of bed.  She reported daily activities of caring for her children, getting them ready for school, dropping them off and picking them up at school, and staying in bed the rest of the day.  She would cook and clean while the children were at school.  The claimant reported being able to drive a car, shop in stores, and handle money.  The claimant reported hobbies of painting, drawing, cooking, and reading.  She attended church weekly.  Functionally, the claimant alleged no problems with exertional activities.  She alleged mental issues with memory, completing tasks, concentration, understanding, following directions, and getting along with others.
>
> In a Third Party Function Report, the claimant's mother reiterated the symptoms and limitations from the claimant's adult function report.

In summary of the hearing testimony, the claimant was 27 years old with a GED education.  She last worked in 2018-2019 as a telemarketer.  She alleged that her back locked up.  She alleged being unable to communicate, unable to be around people, and having difficulty with crowds due to anxiety.  She did not do any community service.  She was a single parent with two children aged ten and seven.  She missed appointments because she would forget.  She alleged having depression, not wanting to get out of bed, and difficulty concentrating.  She stayed in bed two weeks out of a month.  She alleged panic attacks four to five times a week when leaving her house.  She alleged back spasms and back pain when bending down.  She alleged constant back pain.  She could sit for ten minutes and lift 15 pounds.

(AR at 20.)

After providing this summary, the ALJ identified what the Court perceives to be four reasons for deeming Plaintiff's symptom testimony less than fully credible.  (*Id.* at 21-23.)  The first was inconsistency with Plaintiff's activities of daily living ("ADLs"), with the ALJ explaining as follows:

The claimant alleged being unable to work due to problems with focus, concentration and being around crowds and spending weeks in bed every month, but the medical evidence did not support her allegations of extreme limitations.  Her activities of daily living were intact, she lived independently, she drove, she did grocery shopping, and she could care for her two children.  There was no indication that she was unable to take her children to school and return them home.

(*Id.* at 21.)

The ALJ's second proffered reason for the adverse credibility finding was Plaintiff's failure to seek medical treatment for the alleged symptoms: "[S]he was not consistent with attending counseling sessions, missing more appointments than she attended.  She also had no history of inpatient psychiatric hospitalizations or emergency room visits due to anxiety attacks or depressive episodes.  In addition, she had a significant past history of significant substance abuse of heroin and, as late as December 2019, the claimant was still smoking marijuana two to three times a day."  (*Id.* at 21-22.)

The ALJ's third proffered reason for the adverse credibility finding was that

Plaintiff's claimed symptoms were inconsistent with the objective medical evidence.  (*Id.* at 22 ["As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they were inconsistent because of the lack of medical evidence to support the allegations."].)  Most of the ALJ's analysis on this point is summarized in Part IV.A.5 above.  The ALJ concluded that "the unremarkable mental status examination[s] were inconsistent with [Plaintiff's] allegations of spending weeks lying in bed and an inability to leave the house due to mental illness."  (*Id.*)

The ALJ's fourth and final proffered reason for the adverse credibility finding was that Plaintiff's symptoms could be controlled by treatment when Plaintiff was compliant with her prescribed medications:

> In September 2019, the claimant reported that medications were "working well to control her depression and mood swings."  She denied auditory and visual hallucinations, did not appear to respond to internal stimuli, and denied suicidal/homicidal ideations.  In November 2019, the claimant reported that, when she stopped taking her medications, she had a return of symptoms.  However, in February 2020, treatment records indicated stable or improved conditions on medication.  In March 2020, the claimant reported feeling stable during a counseling session.  In May 2020, the claimant reported that her medications were working, she was sleeping better, and she was doing art therapy.  In September 2020, the claimant was noncompliant with a treatment plan because of her concern of increased weight gain.  She was also still using marijuana.  The claimant's ongoing drug use and noncompliance with treatment were issues, especially when the record indicated stable mental symptoms when taking her medications.

(*Id.*)

### 3.    The Parties' Arguments

Plaintiff argues that "[t]he ALJ committed materially harmful error by rejecting [her] symptom testimony in the absence of specific, clear, and convincing reasons supported by substantial evidence in this record as a whole."  (Doc. 15 at 18.)  First, Plaintiff argues that her "course of treatment, including multiple medication trials, was consistent with and supportive of her reported symptoms and limitations from bipolar disorder" and that the ALJ's contrary "rationale was the ALJ's own improper medical

opinion as to what treatment was necessary to show a severe mental impairment," which "the ALJ was not qualified to give." (*Id.* at 20.) Next, Plaintiff argues that although she had "some normal mental status examination findings," such findings were not inconsistent with her testimony because the "providers did note observations of mood lability and rapid speech, and the providers' ordered course of treatment provided ample support for [her] reported symptoms and limitations." (*Id.* at 20-21.) Plaintiff contends that, by concluding otherwise, "the ALJ failed to understand the nature of [her] bipolar disorder." (*Id.* at 21.) Next, Plaintiff argues that the ALJ erred in concluding that her ADLs were inconsistent with her symptom testimony because "the ALJ did not find—and this record does not demonstrate—that a *substantial part of a typical day* was spent engaged in activities inconsistent with disabling limitations, which the Ninth Circuit holds is a prerequisite for a negative credibility determination based on a claimant's activities." (*Id.* at 21-22.) Next, Plaintiff argues that although "[t]he ALJ mentioned [she] missed counseling sessions, stopped taking medications at times, and used marijuana," "[n]one of these observations supported the wholesale dismissal of [her] symptom testimony given the nature of her bipolar disorder, and [her] confirmation she used marijuana for anxiety and to help sleep." (*Id.* at 22-23.) Finally, Plaintiff contends that "[t]his record does not show that [her] notes of stability or even improvement were lasting" and that any "examples of improvement from a claimant's record[] must be viewed in the broader context of the claimant's impairment." (*Id.* at 23.)

The Commissioner defends the sufficiency of the ALJ's reasoning, arguing that the ALJ properly discredited Plaintiff's symptom testimony based on (1) discrepancies between "Plaintiff's subjective allegations to the objective medical evidence and other evidence"; (2) "Plaintiff's sparse history of treatment"; and (3) "the extent of Plaintiff's daily activities, which included the ability to care for children, maintain a home, driving, shopping, cooking, attending church, reading, drawing, painting, and handling her own finances." (Doc. 16 at 8-12.)

In reply, Plaintiff largely reiterates the arguments raised in her opening brief and

argues that *Molina v. Astrue*, 674 F.3d 1104 (9th Cir. 2012), and other cases cited by the Commissioner should be viewed as distinguishable.  (Doc. 17 at 7-10.)

4.   Analysis

The Court finds no harmful error in the ALJ's evaluation of Plaintiff's symptom testimony.  One of the ALJ's proffered reasons for discounting Plaintiff's testimony was that it was inconsistent with the objective medical evidence in the record.  Although this may not serve as an ALJ's sole reason for discounting a claimant's symptom testimony, it is a permissible consideration when (as here) it is coupled with other grounds for an adverse credibility finding.  *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) ("Claimants like Smartt sometimes mischaracterize [Ninth Circuit law] as completely forbidding an ALJ from using inconsistent objective medical evidence in the record to discount subjective symptom testimony.  That is a misreading of [Ninth Circuit law].  When objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony.  We have upheld ALJ decisions that do just that in many cases."); *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.").

As discussed in Part IV.A.5 above, the ALJ's finding of inconsistency with the objective medical evidence was supported by substantial evidence.  Plaintiff was repeatedly described, both in Cruz's treatment notes and in treatment notes from other providers, as having an unremarkable mental status.  It was rational for the ALJ to construe this evidence as "inconsistent with [Plaintiff's] allegations of spending weeks lying in bed and an inability to leave the house due to mental illness."  (AR at 22.)  Even accepting that the symptoms associated with mental illness can wax and wane, this is not a situation where the ALJ cherry-picked an isolated instance of an unremarkable mental status examination—the ALJ cited multiple records from multiple providers spanning a period of years.  *See, e.g., Ozolins v. Saul*, 849 F. App'x 682, 682 (9th Cir. 2021) ("The ALJ gave

- 18 -

'specific, clear, and convincing' reasons supported by substantial evidence for discounting Ozolins' subjective symptom testimony.  Ozolins' complaints were inconsistent with the medical record, which reflected, for instance, largely unremarkable mental status examination findings.").

    Another of the ALJ's proffered reasons for the adverse credibility determination was that Plaintiff's description of her symptoms conflicted with Plaintiff's ADLs.  Under Ninth Circuit law, this is a permissible basis for discounting a claimant's symptom testimony.  *Molina*, 674 F.3d at 1112-13 ("[T]he ALJ may consider inconsistencies . . . between the testimony and the claimant's conduct . . . and whether the claimant engages in daily activities inconsistent with the alleged symptoms.  While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting.  Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.") (cleaned up); *Fry v. Berryhill*, 749 F. App'x 659, 660 (9th Cir. 2019) ("The ALJ proffered specific, clear, and convincing reasons for discounting Fry's testimony concerning the severity of her symptoms, including inconsistencies between her daily activities and alleged limitations . . . .").

    The ALJ's finding of inconsistency was supported by substantial evidence.  Plaintiff acknowledged in her function report that she engages in such daily activities as caring for her children, getting them ready for school, dropping them off at school, cooking and cleaning while the children are at school, driving a car, shopping in stores and online, handling money, painting, drawing, cooking, reading, and attending church each week.  (AR at 267-74.)  However, when testifying during the hearing, Plaintiff claimed that she was unable to communicate with others, had difficulty concentrating, stayed in bed two weeks out of each month, had panic attacks four to five times a week when leaving her house, had constant back pain that was a 10 on a 1-to-10 pain scale, and could only sit for

10 minutes.  (*Id.* at 89-96.)  Although Plaintiff attempts to identify various ways in which her ADLs could be reconciled with her symptom testimony, it was rational for the ALJ to conclude they were contradictory.  *Cf. Ozolins*, 849 F. App'x at 682 (concluding that "[t]he ALJ gave 'specific, clear, and convincing' reasons supported by substantial evidence for discounting Ozolins' subjective symptom testimony" where "Ozolins' complaints were also inconsistent with her daily activities, which showed an ability to perform a wide range of chores and errands").  And "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas*, 278 F.3d at 954.

It should be noted that upholding an adverse credibility finding in this circumstance does not result in "disability claimants [being] penalized for attempting to lead normal lives in the face of their limitations." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).  The Ninth Circuit has recognized that "[i]nconsistencies between a claimant's testimony and the claimant's reported activities provide a valid reason for an adverse credibility determination."  *Burrell v. Colvin*, 775 F.3d 1133, 1137-38 (9th Cir. 2014).  *See also Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (recognizing that a "tendency to exaggerate" is a "specific and convincing reason[]" for discrediting a claimant's testimony); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) ("To determine whether the claimant's testimony regarding the severity of her symptoms is credible, the ALJ may consider . . . ordinary techniques of credibility evaluation, such as . . . prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid . . . .").

Because the ALJ identified multiple clear and convincing reasons, supported by substantial evidence, for discrediting Plaintiff's symptom testimony, it is unnecessary to resolve Plaintiff's objections to the additional rationales the ALJ offered for discrediting her testimony.  Any error as to those additional rationales was harmless.  *See, e.g., Molina*, 674 F.3d at 1112-13 ("[S]everal of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's

testimony, but also provided valid reasons that were supported by the record."); *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008) ("Because we conclude that two of the ALJ's reasons supporting his adverse credibility finding are invalid, we must determine whether the ALJ's reliance on such reasons was harmless error. . . .  [T]he relevant inquiry in this context is not whether the ALJ would have made a different decision absent any error, it is whether the ALJ's decision remains legally valid, despite such error. . . .  Here, the ALJ's decision finding Carmickle less than fully credible is valid, despite the errors identified above.").

Accordingly,

**IT IS ORDERED** that the decision of the ALJ is **affirmed**.  The Clerk shall enter judgment accordingly and terminate this action.

Dated this 25th day of September, 2023.

Dominic W. Lanza
United States District Judge